UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Fishbowl Solutions, Inc.,                        Civ. No. 21-794 (SRN/BRT)

         Plaintiff,

v.

                                               **ORDER**

The Hanover Insurance Company,

         Defendant.

Joseph A. Nilan, Esq., Nicholas J. Sideras, Esq., Daniel A. Ellerbock, Esq., Gregerson, Rosow, Johnson & Nilan, Counsel for Plaintiff Fishbowl Solutions, Inc.

Scott G. Johnson, Esq., Rebecca A. Zadaka, Esq., Erica A. Ramsey, Esq., Robins Kaplan LLP, Counsel for Defendant The Hanover Insurance Company

       This matter is before the Court on Plaintiff Fishbowl Solutions, Inc.'s ("Fishbowl") Motion to Amend the Complaint to Add a Claim Under Minn. Stat. § 604.18 for bad faith. (Doc. No. 26.) Defendant Hanover Insurance Company ("Hanover") opposes Fishbowl's motion. A hearing was held on January 24, 2022. (Doc. No. 41.) During the hearing, Fishbowl requested permission to supplement the record. The Court granted Fishbowl's request to file a letter and affidavit. (*Id.*) Hanover was permitted a letter response. (*Id.*) Both submissions have since been filed with the Court. (Doc. Nos. 43, 44.) For the reasons stated below, the Court denies Fishbowl's Motion to Amend because the claim of coverage under the Technology Professional Liability Policy ("Policy") at issue is "fairly debatable."

## I.  BACKGROUND

### A.  Fishbowl's Allegations

This insurance coverage dispute is between insured Fishbowl and its insurer Hanover. In 2019, Fishbowl purchased the Policy from Hanover for the period from July 17, 2019 to July 17, 2020. (Doc. No. 1, Compl. ¶ 27; Doc. No. 32, Declaration of Scott G. Johnson ("Johnson Decl.") ¶ 3; Doc. No. 32-1.)

In November 2019, a fraudster obtained unauthorized access to the email account of Wendy Williams, one of Fishbowl's accountants. (Compl. ¶ 10.) The fraudster coded rules into Fishbowl's email system that allowed the fraudster to intercept emails between Fishbowl's customers and its accountant, preventing the accountant from seeing those emails. (*Id.* ¶ 12.) By posing as Fishbowl's accountant, the fraudster directed multiple customers of Fishbowl to pay outstanding invoices owed to Fishbowl to the fraudster's account. (*Id.* ¶¶ 16–21.) In its proposed amended complaint, Fishbowl calls this a "man in the middle" attack. (Doc. No. 26 at ¶ 1.)

Fishbowl discovered the fraudster's activities on January 17, 2020, and notified its customers. (Compl. ¶¶ 22–23.) Most of the effected customers recalled or redacted the payments they had made to the fraudster. (*Id.* ¶ 23.) Only one customer could not: Federated Insurance ("Federated"). (*Id.*) Federated's payments to the fraudster totaled $176, 962.00. (*Id.* ¶ 24.) With help from the United States Secret Service, $29,035.79 of Federated's payments were successfully seized. (*Id.* ¶ 25.)

On January 20, 2020, Fishbowl requested coverage from Hanover under the Policy for the losses suffered in connection with the fraudster's conduct, alleging a loss in

2

excess of $147,000. (*Id.* ¶¶ 26, 36.) After several months of communication, and repeated denials, Hanover denied Fishbowl's claim for coverage under the Policy's Cyber Business Interruption and Extra Expense coverage. (*Id.* ¶¶ 36–70.)[1] Fishbowl filed suit against Hanover on March 24, 2021, alleging a breach of contract claim under the Policy. (*See generally* (Compl.).)

Fishbowl now moves to amend its Complaint to include a bad-faith insurance claim under Minn. Stat. § 604.18 (Count III). (Doc. No. 26; Doc. No. 28, Pl. Fishbowl Solutions, Inc.'s Mem. of Law in Supp. of Mot. to Amend to Add Claim Under Minn. Stat. § 604.18 ("Pl.'s Mem.").) Fishbowl's proposed amended complaint adds facts to support its new claim of bad faith as well as details to already pled allegations supporting breach of contract and declaratory judgment of the denial of coverage. (Doc. No. 26 at 16-17.) Fishbowl's proposed allegations at Count III provide:

### **Bad-Faith Claim Handling (Minn. Stat. § 604.18)**

94. Fishbowl repeats and re-alleges the allegations set forth in Paragraphs 1 through 93 above.

95. Hanover failed to possess a reasonable basis for denying coverage for Fishbowl's loss in connection with the cyber-fraudster's "man-in-the-middle" attack.

96. Hanover knew of the lack of a reasonable basis for denying coverage or acted in reckless disregard of the lack of a reasonable basis for denying coverage to Fishbowl.

---

[1] In its proposed amended complaint, Fishbowl adds detail about the delay and multiple denials. Hanover's investigation first focused on Fishbowl's Commercial Property Coverage. (Doc. No. 26 at ¶ 32.) Fishbowl later requested that Hanover review potential coverage under the Policy at issue in this litigation. (Doc. No. 26 at ¶ 46.)

>       97.     Fishbowl is entitled to damages and costs as a result of
> Hanover's denial and/or unreasonable delay in processing Fishbowl's
> claim, including reasonable attorney fees actually incurred to establish
> Hanover's violation of Minn. Stat. § 604.18).

(*Id.* at 17.)

### B.      The Policy and the Coverage at Issue

The Policy at issue provided, among other things, "Cyber Business Interruption and Extra Expense" ("Business Interruption") coverage as set forth below:

> We will pay actual loss of "business income" and additional "extra expense" incurred by you during the "period of restoration" directly resulting from a "data breach" which is first discovered during the "policy period" and which results in an actual impairment or denial of service of "business operations" during the "policy period."

(Doc. No. 32-1 at 28.) According to the Policy, "Business Operations" means the insured's "usual and regular business activities." (*Id.* at 35.) "Business Income" under the Policy means the following:

> a.      Net Income (Net Profit or Loss before income taxes) that would
>         have been earned or incurred if there had been no impairment or
>         denial of "business operations" due to a covered "data breach" and
>
> b.      Continuing normal operating expenses incurred, including payroll.

(*Id.*) The "Period of Restoration" means in relevant part:

> a.      The period of time that begins:
>
>               (l) For "Extra Expenses," immediately after the
>               actual or potential impairment or denial of
>               "business operations" occurs; and
>
>               (2) For the loss of "Business Income," after 24
>               hours or the number of hours shown as the
>               Cyber Business Interruption Waiting Period
>               Deductible in the **SCHEDULE** on this

>> Coverage Forms, whichever is greater, immediately following the time the actual impairment or denial of "business operations" first occurs.
>
> b. The "Period of Restoration" ends on the earlier of the following:
>
>> (1) The date "business operations" are restored, with due diligence and dispatch, to the condition that would have existed had there been no impairment or denial; or
>>
>> (2) Sixty (60) days after the date the actual impairment or denial of "business operations" first occurs;
>
> The expiration date of this Policy or Coverage Part will not cut short the "period of restoration."

(*Id.* at 36.)

## II. ANALYSIS

### A. Motion to Amend Standard

Except where amendment is permitted as a matter of course, under Federal Rule of Civil Procedure 15, "a party may amend its pleading only with the opposing party's written consent or the court's leave [and] [t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Despite this liberal standard, a party does not have an absolute right to amend. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). It is well established that a motion to amend should be denied if "there are compelling reasons 'such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving

party, or futility of the amendment.'" *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (quoting *Hammer v. City of Osage Beach*, 318 F.3d 832, 844 (8th Cir. 2005)). The determination as to whether to grant leave to amend pursuant to Federal Rule of Civil Procedure 15 is within the sound discretion of the court. *See, e.g.*, *Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 394 (8th Cir. 2016).[2]

A motion for leave to amend a pleading is futile when the amended pleading would not withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). In deciding a Rule 12(b)(6) motion, a court accepts as true all well-pleaded factual allegations and then determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). In doing so, the court must draw reasonable inferences in the plaintiff's favor. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sletten & Brettin Orthodontics v. Cont'l Cas. Co.*, 782 F.3d 931, 934 (8th Cir. 2015) (citation and quotations omitted). Facial plausibility of a claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although a sufficient complaint need not be detailed, it must contain "[f]actual allegations . . .

---

[2]  The parties agree that Rule 15 of the Federal Rules of Civil Procedure applies.

6

enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

### B.     Fishbowl's Proposed Bad-Faith Claim

Although the Federal Rules establish the process for determining whether to grant a motion to amend, Minn. Stat.§ 604.18 establishes the substantive legal standard for liability for establishing a bad-faith claim under Minnesota law. To establish a bad-faith claim under Minnesota Statute § 604.18, a party must show both (1) the absence of a reasonable basis for denying the benefits of the insurance policy, and (2) that the insurer knew of or acted in reckless disregard of the lack of a reasonable basis for denying the benefits. *See* Minn. Stat. § 604.18, subd. 2(a). The first prong is objective, requiring courts to consider "whether the claim was properly investigated and whether the results of the investigation were subjected to reasonable evaluation and review." *Friedberg v. Chubb & Son, Inc.*, 800 F. Supp. 2d 1020, 1025 (D. Minn. 2011). The second prong is subjective and focuses on "what information the insurer knew and when." *Id.* However, "when a claim is fairly debatable, the insurer is entitled to debate it, whether the debate concerns a matter of fact or law." *Id.*

In its proposed amended complaint, Fishbowl seeks insurance coverage for "loss directly caused by cyber business interruption perpetrated using a 'man in the middle' attack, impairing and interrupting communications between Fishbowl and Fishbowl customers." (Doc. No. 26 at ¶ 1.) Fishbowl argues that a reasonable insurer would have accepted its claim under the Policy's "Business Interruption" coverage because Fishbowl's "business operations" (what it considers its ability to receive payment and

7

communicate with its customers) was impaired by the fraudster's conduct. (Pl.'s Mem. 10–13; Doc. No. 37, Pl. Fishbowl Solutions, Inc.'s Reply Mem. of Law in Supp. of Mot. to Amend to Add Claim Under Minn. Stat. § 604.18 ("Pl.'s Reply") 2–8).)

Fishbowl relies heavily on Hanover's 11-month period of delay, failure to timely consider all policies and coverages that might apply, and multiple denials of coverage that began on January 20, 2020, and ended with a sixth coverage denial letter written by Jason Cormier, Hanover's Property Claims Director, on November 19, 2020. (Doc. No. 26 at ¶¶ 74, 76, 79, 82.) Cormier's sixth denial letter stated:

> The Data Breach Expense coverage titled Cyber Business Interruption and Extra Expense provides coverage for business income and extra expense during the period of restoration and results in an actual impairment or denial of service of business operations. Fishbowl experienced a loss when a third party erroneously paid a fraudulent party on the terms of fraudulent instruction *[sic]* purportedly to be written by an employee of Fishbowl Solutions, Inc. and not from an impairment or denial of service.

(Doc. 26 at ¶ 76.)

According to the proposed amended allegations, in the sixth denial letter, Cormier "did not admit that Fishbowl sustained a data breach" but "wrote that Hanover denied coverage to Fishbowl purportedly because no impairment or denial of Fishbowl's services occurred." (*Id.* ¶ 77.) Fishbowl's proposed amended complaint alleges that Cormier's November 9, 2020 written denial contradicts his deposition testimony given on November 5, 2021. (*Id.* ¶ 78.) Fishbowl alleges that Cormier, who oversees Hanover's inside claims organization, admitted at his deposition that Fishbowl "sustained a data breach" and that Fishbowl had "suffered an actual loss of business income as defined under the [] Policy." (*Id.* ¶¶ 74, 78.) As to prong one, the facts as pled, including

8

Cormier's alleged change of position, suggests "the absence of a reasonable basis" for his earlier denial of coverage under the "Business Interruption" policy. *Friedberg*, 800 F. Supp. 2d at 1025.

But even if prong one is satisfied, Fishbowl must also satisfy prong two, "which is the mens rea element of a claim that the insurer breached the statutory standard of conduct . . . that the insurer knew of the lack of a reasonable basis for denying the benefits of the insurance policy or acted in reckless disregard of the lack of a reasonable basis for denying the benefits of the insurance policy." *Peterson v. W. Nat'l Mut. Ins. Co.*, 946 N.W. 2d 903, 912 (Minn. 2020) (citations and quotations omitted). Fishbowl argues that because Hanover repeatedly failed to thoroughly investigate Fishbowl's claim for coverage, that is evidence that prong two is met. However, even assuming that there were many shortcomings in the 11-month investigation by Hanover,³ the claim for coverage under the "Business Interruption" policy is "fairly debatable." *See Shaw v. Farm Bureau Prop. & Cas. Ins. Co.*, No. 20-cv-534 (NEB/TNL), 2020 WL 7625804, at *2 (D. Minn. June 26, 2020) ("[T]he information available to the insurer shows the claim to be fairly debatable.") (citing *Friedberg*, 800 F. Supp. 2d at 1025). "If coverage of the claim is 'fairly debatable,' []'the insurer is entitled to debate it, whether debate concerns a matter of fact or law." *Selective Ins. Co. of S.C. v. Sela*, 353 F. Supp. 3d 847, 864 (D. Minn. 2018).

---

³   As for the investigation, the Court has considered the factual allegations in the proposed amended complaint and Dennis F. McCarthy's declaration at Doc. No. 43.

9

Here, the parties' debate centers on the legal interpretation of the Policy's "Business Interruption" coverage and whether it applies to the "man in the middle" loss alleged by Fishbowl. As discussed above, Fishbowl alleges in its proposed pleading that the "Business Interruption" coverage applies because Fishbowl's loss was caused by an impairment of its business operations (i.e., collecting payment and communicating with its customers). Fishbowl offers several reasons in support of its interpretation of the policy provision at issue, claiming that its business was interrupted by the "man in the middle" fraud, resulting in a loss of "business income," triggering "Business Interruption" coverage. Hanover disagrees with Fishbowl's interpretation of the Policy terms and its legal analysis.

In its Reply, Fishbowl argues that Hanover's opposition to Fishbowl's motion attempts to litigate the merits of the claim rather than the pleading standards. (Pls. Reply 4). But when a futility challenge is made, the Court must consider whether the proposed bad-faith claim would withstand a motion to dismiss. The futility analysis of a bad-faith claim permits Hanover to explain how the information available to the insurer shows that the interpretation of the insurance claim is "fairly debatable." *See, e.g.*, *Friedberg*, 800 F. Supp. 2d at 1029 (finding that Chubb's position on interpreting the ensuing loss provision was, at a minimum, fairly debatable, precluding a finding of bad faith). Here, Hanover has explained why coverage under the "Business Interruption" provision is subject to debate. For example, Hanover argues that "Business Interruption" coverage does not

apply because Fishbowl's loss was caused by "invoice manipulation,"[4] resulting in Fishbowl's customer sending funds for an invoice to a fraudster, and not an actual interruption of Fishbowl's "business operations" that resulted in a loss of "business income" as defined by the Policy. (Def.'s Mem. 15.) This is because Hanover argues that the "Business Interruption" provision covers only prospective earnings — income that "*would* have been earned or incurred" by Fishbowl, not owed money Fishbowl has already earned or incurred but has simply not yet received because the customer paid the invoice to a fraudster. (*Id.* at 14–15 (emphasis added).) Further, according to Hanover, the Policy's term "business operations" is defined as "usual and regular business activities" and means activities that, but for the data breach, would have earned or incurred business income. Hanover also argues that coverage is fairly debatable because Fishbowl's proposed amended complaint does not allege any time period when there was an impairment of Fishbowl's regular business activities that required restoration during the "period of restoration" under Hanover's interpretation of that term. (Def.'s Mem. 15–16.)

Coverage also hinges on the interpretation of "Business Interruption." "Business Interruption" is not separately defined in the Policy. And significantly, Fishbowl conceded at the January 24, 2022 hearing that the application of the "Business

---

[4] As noted previously, Hanover labels the fraudster's activities as "invoice manipulation," presumably to argue that other types of coverage were available from other insurers to Fishbowl to cover Fishbowl's "man in the middle" loss. The Court finds the multiple references to coverage labeled as "invoice manipulation" coverage is irrelevant to the issues before the Court on Fishbowl's motion to amend.

Interruption" coverage to "man in the middle" losses is an unresolved legal issue. (*See* Doc. No. 41, Minute Entry for hearing held on January 24, 2022 (underlying transcript has not been ordered at the time of this Court's order).) "[W]hen an insured's claim implicates an 'unresolved legal issue'" as part of its bad-faith assertion, courts have held that the insured's claim is "'fairly debatable as a matter of law and will not support a claim of bad faith'" so long as "there is room for reasonable disagreement." *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 650 (6th Cir. 2013) (applying Kentucky law) (citations omitted); *see also Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368, 375 (Ky. 2000) (applying Kentucky law to conclude that "[u]ncertainty as to application of insurance policy provisions . . . is a reasonable and legitimate reason for an insurance company to litigate a claim"). Thus, the admittedly unresolved legal issue about the applicability of the "Business Interruption" coverage to the unique circumstances of this case is fairly debatable.

To be clear, Fishbowl's legal interpretation of the Policy and the meaning of "Business Interruption" may have merit and Fishbowl may ultimately prevail on its breach-of-contract claim. Indeed, Fishbowl's counsel skillfully argued Fishbowl's position on how an unresolved area of insurance law should be resolved in Fishbowl's favor. But even if Fishbowl's interpretation turns out to be correct, the issue presented in the motion to amend is not whether Fishbowl has the correct interpretation, but whether Hanover's interpretation creates reasonable disagreement. "Bad faith does not 'arise simply because the insurer's construction of the policy was subsequently found to be legally incorrect.'" *Selective Ins. Co.*, 353 F. Supp. 3d at 865 (quoting *Friedberg*, 800 F.

12

Supp. 2d at 1027). Because Hanover has shown that the question of coverage under the Policy's "Business Interruption" provision is fairly debatable, the Court finds that Fishbowl's bad-faith claim under § 604.18 would not withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thus, Fishbowl's motion to amend is denied on the grounds of futility.

## ORDER

Therefore, based on the file, records, and submissions herein, **IT IS HEREBY ORDERED** that Plaintiff Fishbowl Solutions, Inc.'s Motion to Amend the Complaint to Add a Claim Under Minn. Stat. § 604.18. (Doc. No. 26) is **DENIED**.

Date:  April 6, 2022                                       *s/ Becky R. Thorson*
                                                           BECKY R. THORSON
                                                           United States Magistrate Judge